```
        IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                              *
NATIONAL RAILROAD PASSENGER   *
CORPORATION (AMTRAK),
                              *
     Plaintiff,
                              *
          v.                        CIVIL NO.: WDQ-08-1501
                              *
RAILWAY EXPRESS, LLC,
                              *
     Defendant.
                              *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

National Railroad Passenger Corporation ("Amtrak") sued Railway Express, LLC ("RE") for trespass, a declaratory judgment, and injunctive relief. Pending are Amtrak's motions (1) for a preliminary injunction, and (2) to stay the case, and RE's motion for a preliminary injunction. For the following reasons, Amtrak's motion for a preliminary injunction will be granted and its motion to stay will be denied, and RE's motion for a preliminary injunction will be denied.

I.  Background

Amtrak sued RE over rights it claims to have in a subsurface area of land ("Parcel") near Baltimore's Penn Station. The Parcel is adjacent to Amtrak's railroad tracks, and beneath the REA Building, which is owned by RE. Compl. ¶ 1.

At the turn of the 20th century, the Parcel was owned by various railroad companies. *Id.* ¶ 7.  In 1944, the United States

1

Government decided to acquire a site for a parcel post station in Baltimore; it filed a condemnation proceeding in the U.S. District Court for the District of Maryland to acquire the land. *Id.* ¶ 8.  A dispute arose in the condemnation proceeding and the Government and then-owners of the property--the Pennsylvania Railroad Company, and the Northern Central Railway Company (Amtrak's predecessors-in-interest)--entered into an agreement in February 1946 ("1946 Agreement").  *Id.*  The 1946 Agreement gave the railroads an easement for the subsurface area beneath the building for train operations.  *Id.* ¶ 8-9.  It gave the Government the right to use the subsurface area as long as it did not unreasonably interfere with the railroads' use.  *Id.* ¶ 9.  In April 1946, an Amendment to the Declaration of Taking was filed ("Amendment").  *Id.* ¶ 10.

The railroads and their successors, including Amtrak, have since used the Parcel for track safety, loading, maintenance, emergency, police, and other railway-related operations.  *Id.* ¶ 13.  By conveyances in 1955 and 1973, the Government transferred its interest in the building to Baltimore City.  *Id.* ¶ 15.  The City used the site for operation of the Housing Authority of Baltimore City ("HABC").  Def. Supp. Mem. at 9.  In June 2005, Baltimore City transferred ownership of the REA Building--which sits atop the Parcel--to RE.[1]  Compl. ¶ 16.

---

[1] Amtrak argues that not all the U.S. Government's rights were transferred to Baltimore City--and subsequently RE--by the

RE needed to repair the underside of the REA Building, but could not do so without entering the Parcel. *Id.* ¶ 18. In return for access, RE promised to pave portions of the Parcel and return it to Amtrak's use. *Id.* Amtrak agreed because it did not need use of the Parcel.[2] *Id.* RE then removed sections of a security barrier[3] on the Parcel, and placed a security fence on the north end of the Parcel dividing it from the rail tracks. *Id.* ¶ 19. In July 2008, Amtrak needed the Parcel to replace storage it had lost. *Id.* ¶ 20. Without this access, fire engines, safety equipment, and large railroad equipment could not reach the station, tracks, and platforms. *Id.*

RE advised Amtrak that it (1) intended to exclude Amtrak from the Parcel in June 2008, and (2) believes Amtrak has no rights to the Parcel. *Id.* ¶ 21. RE told Amtrak that it intends to use the Parcel for parking for tenants of the REA Building. *Id.* ¶ 20.

On June 10, 2008, Amtrak filed this suit for (1) trespass, (2) a declaratory judgment that it has rights in the Parcel and

---

1946 Agreement.

[2] RE states that in 2007, it showed Amtrak its plans for redevelopment of the REA Building and Parcel, which included various uses of the Parcel. Def. Supp. Mem. at 11. RE planned elevator access to the Parcel, parking, a trash dumpster, and new fencing. *Id.* RE states that it coordinated with Amtrak on its plans for redevelopment of the Parcel. *Id.* at 12.

[3] Amtrak leases a portion of its land to Baltimore City for a public garage. The barrier fence prevented public access to the Parcel. Compl. ¶ 19.

RE has no right to bar it from the Parcel, and (3) injunctive relief barring RE from the Parcel without Amtrak's permission, and requiring RE to replace the barrier fence it removed and remove the security fence it erected on the Parcel.  Amtrak also moved for a temporary restraining order and/or preliminary injunction enjoining RE from using--or prohibiting Amtrak from using--the Parcel.  Paper No. 2.

On July 1, 2008, RE opposed Amtrak's motion and moved for its own preliminary injunction.[4]  Paper No. 8.  It argued that it had exclusive use of the Parcel as long as it did not interfere with Amtrak's limited permitted railroad uses.  *Id.*

On July 3, 2008, the parties filed a consent order staying the proceedings for 60 days ("Consent Order").  Paper No. 9.  During that period, Amtrak had exclusive use of the north side of the Parcel ("Parcel I"), and would grant RE reasonable access to Parcel I to maintain the REA Building.  *Id.*  RE would have exclusive use of the south side of the Parcel ("Parcel II"), around which it would have a security fence; Amtrak was given permission to enter Parcel II for safety and security purposes.  *Id.*  The parties extended the stay twice to December 2008.  Paper Nos. 16, 19.

On April 1, 2009, the Court lifted the stay, and scheduled a preliminary injunction hearing.  Paper No. 24.  On June 8, 2009,

---

[4] On June 11, 2008, RE filed a suit against Amtrak that was consolidated with this case.

Amtrak moved to stay the case because it would be filing a condemnation proceeding involving the Parcel that, it argues, would moot the case. On July 15, 2009, the Court held a hearing on the motions for preliminary injunction, and the motion to stay.

## II. Analysis

### A. Amtrak's Motion to Stay

At the hearing, Amtrak's counsel stated that Amtrak has not filed a condemnation action because it made RE an offer to purchase its interest in the Parcel and is waiting for a response. Hrg. Tr. at 3-4, July 15, 2009. Because the condemnation action has not been filed, and the parties' rights in the Parcel need adjudication in the interim, the motion to stay will be denied.

### B. Motions for Preliminary Injunction

A preliminary injunction is an "extraordinary and drastic remedy" granted in limited circumstances when there is a need to protect the status quo and prevent irreparable harm. *Munaf v. Geren*, 128 S. Ct. 2207, 2219 (2008); *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 524 (4th Cir. 2003). A party seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm if an injunction is not granted, (3) the balance of equities is in its favor, and (4) an injunction is in the

public interest.[5]  *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008); *WV Ass'n of Club Owners and Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009).

Irreparable harm must be likely, not merely possible. *Winter*, 129 S. Ct. at 375-76.  The Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 376 (*quoting Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)).  The Court should also "pay particular regard for the public consequences."  *Id.* at 376-77.

   1.   Amtrak's Motion

Amtrak seeks an order prohibiting RE from (1) using Parcel I without Amtrak's permission, and (2) denying Amtrak access to Parcel I.[6]  RE wants to use Parcel I for parking for its tenants.

---

[5] The Fourth Circuit has often stated the factors to be considered when a court is deciding whether to grant a preliminary injunction: (1) likelihood of irreparable harm to the plaintiff, (2) likelihood of harm to the defendant, (3) plaintiff's likelihood of success on the merits, and (4) the public interest.  *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 193 (4th Cir. 1977); *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 (4th Cir. 2002).  Under that authority, the court balances the harms to the parties, and if it tips "decidedly in favor of the plaintiff," and the plaintiff raised litigable questions, he would receive an injunction.  *Scotts*, 315 F.3d at 271.
   However, in *WV Ass'n of Club Owners and Fraternal Servs.*, the Fourth Circuit stated that a plaintiff seeking an injunction must show all the elements noted above.  553 F.3d at 298.

[6] Amtrak asks the Court to continue the terms of the Consent Order, under which Amtrak had primary use of Parcel I, and RE had primary use of Parcel II.  Paper No. 9; Hrg. Tr. at 13.

Amtrak has demonstrated a likelihood that it will succeed in its claim of interest in the Parcel.  The Amendment provided the railroads the right to use the Parcel "for railway purposes," which includes "the right to maintain, use, replace and remove" the tracks.  Compl., Ex. 2 at 3-4.  The Government had the right to use the Parcel "in any way which [did] not unreasonably interfere with the use of the [Parcel] for railway purposes." *Id.* at 4.  Thus, Amtrak's use of the Parcel for maintenance and safety operations is likely permissible under the 1946 Agreement and Amendment.

Amtrak argues that it will suffer irreparable harm because it "will be unable to stage, organize and perform essential railroad track, bridge and tunnel maintenance and repairs."  Pl. Supp. Mem. at 13.  It argues that safety equipment will be unable to access Penn Station, the tracks or platform.  *Id.*  David Flinkstrom, Amtrak's Senior Director of Design and Standards, declared that fuel delivery to Amtrak's generator--that provides emergency power at Penn Station--is done by a large fuel truck that must reach the generator through the Parcel.[7]  David P.

---

[7] Amtrak has identified various uses of the Parcel, including: (1) maintaining the railroad interlocking system; (2) maintaining the emergency generator; (3) accessing the tracks with rubber-tired vehicles and Hi-rail vehicles; (4) accessing its Central Instrument House; (5) weekly track inspections; (6) staging its employees prior to maintenance work; (7) maintaining its 138kV Transmission Line; (8) repairing track components; (9) cleaning and removing debris from tracks; (10) parking for Amtrak employees who carry heavy tools; (11) accessing tracks on the Parcel; (12) storing large and expensive railway vehicles and

7

Flinkstrom Decl. ¶ 3, July 9, 2009.

As discussed below, the balance of equities favors Amtrak because any harm RE may suffer will be monetary, and can be compensated by a money judgment.

Finally, an injunction is in the public interest for the safety and maintenance reasons Amtrak has identified.  Amtrak states that, among other things, the Parcel helps Amtrak (1) inspect and maintain the tracks, (2) safely handle cargo, (3) provide access to fire trucks and other emergency vehicles, and (4) restrict individuals' access to the tracks.  Pl. Supp. Mem. at 28-29; Paul J. Mallon Decl. ¶¶ 3-4, July 9, 2009; Breneman Decl. ¶¶ 3-4.

Thus, Amtrak's motion for a preliminary injunction will be granted.  The parties will operate under the terms of the July 8, 2008, Consent Order.  Paper No. 11.

### 2. RE's Motion

RE seeks an order (1) permitting it to use Parcel I for parking and other uses related to redevelopment of the area, (2) prohibiting Amtrak from excluding RE or its guests from Parcel I, (3) requiring Amtrak to remove the concrete barriers it placed, and (4) enforcing the use of the Parcel set forth in RE's development plat.  Paper No. 37.

RE's only articulable harm is the loss of approximately

---

equipment; and (13) accessing its communications systems. William L. Breneman Decl. ¶ 3, July 9, 2009.

$90,000 per year in revenue if it cannot use Parcel I for tenant parking. Hrg. Tr. at 28-29. Harm that is compensable by money damages is generally not considered irreparable. *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994).[8] As RE has not shown irreparable harm, its motion will be denied.

III. Conclusion

For the reasons stated above, Amtrak's motion for a preliminary injunction will be granted, and its motion to stay and RE's motion for a preliminary injunction will be denied.


July 17, 2009                                /s/
Date                                 William D. Quarles, Jr.
                                     United States District Judge

---

[8] *Accord Person v. Mayor and City Council of Baltimore*, 437 F. Supp. 2d 476, 479 (D. Md. 2006); *Qualls Assocs., Inc. v. Mayor and City Council of Baltimore*, 279 F. Supp. 2d 660, 661 (D. Md. 2003). RE has speculated that it may go out of business if it does not receive that revenue. Hrg. Tr. at 28-32. RE has not presented evidence of its financial situation.