IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL RAILROAD                    *
PASSENGER CORPORATION
                                     *
V.                                        CIVIL NO. WDQ-08-1501
                                     *
RAILWAY EXPRESS, LLC
                                     *

### MEMORANDUM OPINION

Pending before the Court is Defendant's Motion to Compel Plaintiff's Expert Disclosures and Written Reports pursuant to Fed. R. Civ. P. 26(a)(2)(B).  (Paper No. 46).  The briefing is complete.  No hearing is necessary.  Local Rule 105.6.  For the reasons set forth below, the Court grants in part and denies in part the motion to compel.

## I.  Background

This is a real property case involving the extent to which plaintiff National Railroad Passenger Corporation ("Amtrak") has rights to the subsurface area in a parcel of land located near Baltimore's Penn Station and beneath a building owned by Railway Express ("R/E").  (Paper No. 1, 1-2).  Following extensive settlement negotiations, discovery resumed in August 2009, with expert witness disclosures and written reports due on October 16, 2009.  (Paper No. 44).  Amtrak did not provide expert witness disclosures or written reports by that discovery deadline.  (Paper No. 46-1, 2).  In responding to a subsequent

query by R/E in mid-November, Amtrak stated that it did "not intend to call any specially retained experts . . . but potentially would be calling previously named fact/hybrid witnesses as noted in its answer to interrogatories." (Id.). After complying with Local Rule 104.7, R/E moved to compel Amtrak's compliance with the expert witness disclosure and reporting requirements of Federal Rule of Civil Procedure 26. (Paper No. 46, 3-4).

## II.  Analysis

The parties dispute whether Amtrak must produce expert reports for ten of its employees who may testify at trial. (Paper No. 46-1, 3; Paper No. 47, 3).  Under Rule 26, a party retaining or specially employing a witness to provide expert testimony, or intending to present a witness whose duties as that party's employee regularly involve giving expert testimony, must produce an expert report to the opposing party.  FED. R. CIV. P. 26(a)(2)(B).[1]  Local Rule 104.10 explicates Rule 26, stating:

> Unless otherwise ordered by the Court a
> party must provide the disclosures required
> by Fed. R. Civ. P. 26(a)(2)(B) only as to
> experts retained or specially employed by a
> party to provide expert testimony.  The
> disclosures need not be provided as to
> hybrid fact/expert witnesses such as
> treating physicians...

Local Rule 104.10.

---

[1] This report must contain, among other information, a complete statement of all opinions the witness will express and all information considered by the witness in forming these opinions.  FED. R. CIV. P. 26(a)(2)(B).

R/E argues that Amtrak is attempting to avoid its expert disclosure and discovery obligations by not producing expert reports for its employee witnesses. (Paper No. 46-1, 5; Paper No. 49, 2). R/E urges this Court to follow the majority approach and find that parties must provide expert reports from employee witnesses who are expected to give expert testimony. (Paper No. 46-1, 7-8 (citing Day v. Consol. Rail Corp., 1996 WL 257654, at *2 (S.D.N.Y. May 15, 1996), Minn. Mining and Mfg. Co. v. Signtech USA, Ltd., 177 F.R.D. 459, 460 (D. Minn. 1998), KW Plastics v. U.S. Can Co., 199 F.R.D. 687, 689 (M.D. Ala. 2000), Dyson Tech. Ltd. v. Maytag Corp., 241 F.R.D. 247, 249 (D. Del. 2007))). Amtrak responds that it properly disclosed its employees as hybrid witnesses giving hybrid testimony, which is testimony that does not require production of expert reports.[2] (Paper No. 47, 7). The parties also disagree whether R/E is prejudiced by Amtrak's refusal to produce expert reports from its testifying employees. (Paper No. 46-1, 8-10; Paper No. 47, 6-7). Amtrak notes that R/E has not deposed any of these witnesses, while R/E responds that it is entitled to reports before any deposition. (Id.).

---

[2] Amtrak also suggests that a motion to compel is premature and that a motion to exclude impermissible expert testimony at trial would be more appropriate. (Paper No. 47, 6). However, R/E need not wait to make a motion to exclude improper testimony at trial. Fed R. Civ. P. 37(a)(3)(A); Sullivan v. Glock, 175 F.R.D. 497, 503-505 (D. Md. 1997) (discussing the strategic choice counsel must make between moving to compel or exclude where an opposing party makes insufficient Rule 26(a)(2) disclosures).

This dispute presents three questions.  First, can Amtrak employees be considered experts?  Second, if Amtrak employees qualify as experts, can Amtrak employees who do not regularly provide expert testimony at trial be considered "specially retained" and thus subject to the expert report requirement?  Third, if Amtrak employees are "specially retained" experts, will they give hybrid testimony that is exempt from the reporting requirement or expert testimony in disguise subject to the expert report requirement?

**A.   The Amtrak Employees May Qualify as Experts.**

A threshold question is whether the railroad employees can qualify as experts.  Expert testimony is testimony based on scientific, technical, or other specialized knowledge that will assist the trier of fact in reaching a decision on an issue. United States v. Dorsey, 45 F.3d 809, 813 (4th Cir. 1995).  The specialized nature of railroading and the unique skills and knowledge required for effective railroad operations, have often led courts to classify railroad employees as experts on the basis of their specialized knowledge.  Beanland v. Chicago, Rock Island, Pac. R.R. Co., 480 F.2d 109, 116 (8th Cir. 1973) ("[C]ompetent expert testimony is generally admissible in cases involving the operations of a railroad which necessarily involve facts peculiar to such railroading"); Bridger v. Union Ry. Co., 355 F.2d 382, 389 (6th Cir. 1966) ("the proper operation of a

4

railroad involves a combination of factors not within the
knowledge of the average juryman"); <u>Sehlin v. Chicago,
Milwaukee, St. Paul, and Pac. R.R. Co.</u>, 686 P.2d 492, 498 (Wash.
App. 1984) (acknowledging that "historically railroad workers
are given an 'expert' status concerning railroad operations"
even as that court chose not to do so in that case).

It is the trial judge in this matter who will ultimately
decide how to classify Amtrak employees and their testimony at
trial.  However, this Court notes the technical nature of much
of the testimony that Amtrak employees will offer in this case.
<u>See,</u> e.g., (Paper No. 47-1, 12) ("Rick Catania is the Assistant
Division Engineer for Amtrak's CNS department and would have
knowledge regarding inspections, repair and maintenance of the
Central Instrument House and other aspects of train signaling
and train movement as those issues relate to the Parcels").
This kind of testimony on railroad operations is beyond common
knowledge and as such could qualify as expert testimony.
Therefore, further analysis as to whether Amtrak employees are
"specially retained" and thus subject to the reporting
requirement is warranted.

**B.   Amtrak Employees are "Retained" or "Specially Employed"
Witnesses to Whom the Expert Report Requirement Generally
Applies.**

Having found that Amtrak employees may qualify as experts,
the Court must next examine the reporting requirement of FED. R.

CIV. P. 26(a)(2)(B).  Under this Rule, a written report is
required if a witness is either

> retained or specially employed to provide expert
> testimony in the case, or

> one whose duties as the party's employee regularly
> involve giving expert testimony.

Id.

In its opposition, Amtrak does not contest – indeed it does
not even address – that these 10 Amtrak employees are either
"specially employed" or have duties that regularly involve
giving expert testimony.  Rather, Amtrak acknowledges that an
argument might be made that their testimony is "expert," but
that they are at best "hybrid" witnesses who are expressly
excused from any report requirement under Local Rule 104.  Thus,
Amtrak appears to concede at least for purposes of this motion
that these employees meet the definition under FED. R. CIV. P.
2(B) but are excused from a report under Local Rule.  In any
event, these employees meet the definition of "specially
employed" even if they are not regularly involved in giving
expert testimony (as the record is silent on this point).

The Fourth Circuit has yet to address when employees whose
duties do not regularly involve giving expert testimony can be
considered "specially retained" for purposes of Rule 26.  In
this context, a review of other courts' analyses of this
question is helpful.

Some courts strictly interpret Rule 26(a)(2)(B) as to a "subset" of the disclosure requirement of Rule 26(a)(2)(A) that entirely exempts from the reporting requirement employees of a party who do not regularly give expert testimony as part of the normal scope of their employment. See Greenhaw v. City of Cedar Rapids, 255 F.R.D. 484, 487-88 (N.D. Iowa 2009) (citing, e.g., Navajo Nation v. Norris, 189 F.R.D. 610 (E.D. Wash. 1999); GSI Group, Inc. v. Sukup Mfg. Co., Civ. No. 05-3011, 2007 WL 853959 at *2 (C.D. Ill. Mar. 16, 2007) (collecting authority to support the conclusion that an expert report is required only where an employee is both retained or specially employed as a witness and his duties regularly involve giving expert testimony)).

However, the majority of courts take the broader view that whenever an employee of a party gives expert testimony, even if outside the normal scope of his or her employment, the producing party must provide an expert report. Funai Elec. Co. v. Daewoo Elec. Corp., No. C 04-1830, 2007 WL 108972, at *3 (N.D. Cal. Apr. 11, 2007) ("[A] majority of courts require reports from employee experts who render opinions on matters outside the scope of their employment."); see also Day, 1996 WL 257654 at *2 (criticizing the strict view of Rule 26(a)(2) as "implausible" and holding that a witness whose duties do not regularly involve giving expert testimony must still provide a report when his employer, a party, "retains or specially employs" him to

testify); Minn. Mining and Mfg. Co., 177 F.R.D. at 460-61
(following Day in concluding that a broader view of Rule
26(a)(2)'s expert reporting requirement is "entirely consistent
with the spirit" of the Rule); KW Plastics, 199 F.R.D. at 689
(following Day and relying on legislative history to conclude
that a broad interpretation of Rule 26(a)(2) is consistent with
the "point" of the Rule: "to minimize unfair surprise and
prejudice resulting from 'sketchy and vague' disclosure prior to
trial"); Dyson Tech. Ltd., 241 F.R.D. at 249 (same).  George
Brent Mickum IV & Luther L. Hajek, Guise, Contrivance, or Artful
Dodging?: The Discovery Rules Governing Testifying Employee
Experts, 24 REV. LITIG. 301, 332-41 (2005) (commenting that the
majority of courts require employee experts who give expert
opinions to provide expert reports).  Courts broadly
interpreting Rule 26 emphasize that it is inconsistent with the
spirit of the rule to exclude a category of expert trial
witnesses from having to produce reports.  See KW Plastics, 199
F.R.D. at 689 (quoting Day, 1996 WL 257654 at *2) ("The logic of
defendant's position would be to create a category of expert
trial witness for whom no written disclosure is required – a
result plainly not contemplated by the drafters of the current
version of the rules.").

The majority view on this issue is more consistent with the
spirit of discovery and leads to more efficient discovery.  See

Hickman v. Taylor, 329 U.S. 495, 507 (1947) (commenting that discovery rules are broadly and liberally construed in favor of discovery); FED. R. CIV. P. 26, Advisory Comm. Notes, 1983 Amd. ("Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons."); Ordon v. Karpie, 223 F.R.D. 33, 36 (D. Conn. 2004) (recognizing that the purpose of the expert report requirement is to "provide the opposing party with the scope of the expert opinion that will be provided at trial, to allow for an effective cross examination of the witnesses, and to limit the total number of depositions").

Here, but for their employee status, there is little question that the Amtrak employees would be subject to the expert reporting requirement for their forecast opinions on the impact on "Amtrak's real estate operations" or "engineering and/or maintenance practices" related to Amtrak's lack of access to the parcel.  The fact that some of their testimony will be based on knowledge gained in the performance of their ordinary duties does not categorically relieve them of this requirement. Courts look much more critically to the nature and source of their testimony, as discussed below.

**C.    To the Extent Amtrak Employees Provide Expert Testimony Beyond the Scope of Knowledge Gained in Their Normal Course of Duty, Expert Reports are Required as to those Opinions.**

Having found the Amtrak employees to qualify as experts specially retained or employed to give testimony, the Court must examine their forecast testimony to see whether it is subject to the reporting requirement.  As this court noted in Sullivan, "a witness can be a hybrid witness as to certain opinions, but a retained expert as to others."  Sullivan, 175 F.R.D. at 500. Therefore, this Court must review the source of the facts relied upon and the scope of the opinions to be offered by Amtrak's employee witnesses to determine if the employees are giving solely hybrid testimony.  In re USGen New England, Inc., No. 03-30465, 2007 WL 2363353, at *11-12 (Bkrtcy. D. Md. Aug. 16, 2007) (cautioning courts to beware of "retained expert wolves hiding in hybrid fact-expert sheep's clothing").

While the status of a witness is important in establishing the weight that will be given to that witness's testimony and the types of opinions that the witness may express, it is the nature of the testimony itself that exempts hybrid witnesses from additional expert disclosure requirements.  Sullivan, 175 F.R.D. at 500.  The hybrid witness exception applies when testimony is given arising out of personal observations made in the normal course of duty.  Desrosiers, 2009 WL 4406149 at *5. As such, a hybrid witness may relay factual observations and express opinions flowing from those factual observations given their established expertise.  Sullivan, 175 F.R.D. at 500.  For

10

example, expert report disclosures are not required of treating physicians.[3]  Local Rule 104.10 (interpreting FED. R. CIV. P. 26(a)(2)); <u>Lauria v. Nat'l R.R. Passenger Corp.</u>, Civ. No. 95-1561, 1997 WL 138906, *2 (E.D. Pa. Mar. 24, 1997) (finding that doctors' testimonies were not subject to the reporting requirement because they were within the doctors' areas of expertise and related to their treatment of plaintiff's injuries).

However, a party may not circumvent the requirements of Rule 26 by employing a witness, like a treating physician who treated an injured party, to provide testimony extending into classic expert opinion regarding causation and prognosis. <u>Thomas v. Consolidated Rail Corp.</u>, 169 F.R.D. 1, 2 (D. Mass. 1996) (requiring expert reports from plaintiff's treating physicians who were going to offer testimony based on "professional expertise going beyond treatment per se"); <u>Hall v. Sykes</u>, 164 F.R.D. 46, 48 (E.D. Va. 1995) (requiring expert reports where a treating physician formed a medical opinion based upon factors not learned in the course of treating the patient).  For example, in <u>Desrosiers</u>, testimony about the day-to-day ordinary operation of a boring machine as observed by witnesses was not subject to expert report requirements, but

---

[3] The "treating physician" exception is not literally reserved only for doctors, but the label of this exception serves as an example of the kind of hybrid testimony that is exempt from expert report disclosure under FED. R. CIV. P. 26.  <u>Sullivan</u>, 175 F.R.D. at 500.

testimony by the same witnesses as to the effects a guard would
have had in preventing an accident on the machine required an
expert report.  <u>Desrosiers</u>, 2009 WL 4406149 at *5-6; <u>see also</u>
<u>Certain Underwriters at Lloyd's, London v. Sinkovich</u>, 232 F.3d
200, 203-04 (4th Cir. 2000) (explaining that it is expert
witness testimony to answer hypotheticals and draw conclusions
that are not based on first-hand knowledge); <u>KW Plastics</u>, 199
F.R.D. 687, 689-90 (M.D. Ala. 2000).  (Testimony by a company's
comptroller about the prospective damages his company would face
as a result of alleged tortious activity and a breach of
contract is likewise subject to the expert reporting
requirement).

　　　Similarly, where employees have no connection to the
specific events underlying the case, or have reviewed
information solely in preparation for litigation, they must
produce expert reports.  <u>Prieto v. Malgor</u>, 361 F.3d 1313, 1318-
19 (11th Cir. 2004) (requiring a police officer to produce an
expert report before testifying on the appropriateness of level
of force exhibited by officers when his testimony was based
exclusively on his review of police reports and depositions);
<u>McCulloch v. Hartford Life and Acc. Ins. Co.</u>, 223 F.R.D. 26, 28
(D. Conn. 2004) (finding that testimony regarding the adequacy
of performance requires an expert report); <u>Funai Elec. Co.</u>, 2007
WL 108972 at *5 (concluding that technical evaluations based on

documents reviewed solely for litigation purposes require production of an expert report).

Based on the record, three of Amtrak's purported hybrid witnesses appear unlikely to provide expert opinion testimony, subject to a reporting requirement.  Amtrak asserts that Steve Haerter, Sgt. William Booker, and Cpt. Anthony Anderson will relay information about the historical use of the parcels in question and specific conversations between Amtrak and R/E. (Paper No. 47-1, 13).  This testimony appears to be predominantly factual in nature and is not likely to involve hypothetical information, knowledge beyond that gained in the witnesses' ordinary duties, or information provided to the witnesses for purposes of the litigation.  See (Paper No. 47-1, 13).

It is a closer question, however, as to the remaining witnesses.  This lawsuit concerns the parties' rights to the subsurface area of a parcel of land near Baltimore's Penn Station.  Amtrak claims exclusive right to use the parcel, while R/E disputes Amtrak's exclusive rights and has allegedly restricted Amtrak's use of the parcel.  Amtrak seeks a declaratory judgment and injunctive relief stating that, without relief, "Amtrak will be irreparably harmed" as it will be "denied access to land necessary to maintain its railway operations."  (Paper No. 1, 14).  However, as objected to by

13

R/E, Amtrak's interrogatory answers indicate that certain Amtrak employees may be asked to provide forward-looking "knowledge" or "opinions."[4]  For example, defendant states that:  "Mr. Economou would have knowledge as to how Amtrak's real estate operations would be impacted if Amtrak did not have access to the Parcels." (Paper No. 49, 4; Paper No. 47-1, 11-13).  Or, Rick Catania, an Assistant Engineer "would have knowledge as to how Amtrak's ability to repair and maintain the Central Instrument House and other aspects of train signaling and train movement would be impacted if Amtrak did not have access to the Parcels."  (Id.). Or "Mr. Prosser would have knowledge of how the presence of other individuals and/or equipment and/or operations on the Parcels would negatively impact Amtrak's real estate practices". (Id.).

From the description of the testimony of these identified Amtrak employees, Amtrak intends to prove its case.  This is clearly expert testimony, though based certainly in part on knowledge gained in the ordinary course of employment.  However, it is not based entirely so.  Rather, the testimony involves hypothetical situations and relies on information supplied in the litigation context.

This situation is like that in McCulloch v. Hartford Life and Accident Insurance Company, 223 F.R.D. 26 (D. Conn. 2004).

---

[4] The parties dispute which term more accurately reflects the potential testimony.  (Paper No. 49, 4).

There, the Court ordered reports of employee witnesses as, "[i]n order to present [their] opinion . . ., these witnesses must provide substantially more than a recital of facts about what they may have observed on the job.  These witnesses will develop opinions specifically for trial."  Id. at 28.

Thus, as to at least some of its witnesses, Amtrak appears likely to introduce testimony about future consequences based on hypothetical events, and based on information gained outside the witnesses' ordinary duties and supplied in the litigation context.  (Paper No. 47-1, 11-13).  Or, to use the McCulloch formulation, they "will develop opinions specifically for trial."  Id.  Failure to file complete expert disclosures for such testimony will result in exclusion of that testimony at trial under the Rules.  Desrosiers, 2009 WL 4406149 at *6; KW Plastics, 199 F.R.D. at 689-90.

### III. Conclusion

This Court grants R/E's motion to compel in so far as Amtrak is required to produce expert reports for any of the employees identified in answer to interrogatory No. 11 who will give testimony requiring a report, as described above – "testimony . . . based on hypothetical events, and based on information gained outside the witnesses' ordinary duties and supplied in the litigation context."  Or stated another way, employees who "develop opinions specifically for trial."  It

15

appears to the undersigned that many of the identified Amtrak employees might provide expert testimony outside the scope of hybrid exception.  If they do not file an expert report, the remedy is exclusion at trial of the undisclosed expert testimony.

A separate Order shall issue.


Date:  2/24/10_____                    _____/s/_____
                                          Susan K. Gauvey
                                          United States Magistrate Judge